24388. METROPOLITAN LIFE INSURANCE COMPANY *v.* SMITH.

DECIDED SEPTEMBER 28, 1935.

*Smith, Smith & Bloodworth, W. H. Smith,* for plaintiff in error. *Little, Powell, Reid & Goldstein, James K. Rankin,* contra.

STEPHENS, J. Mrs. Smith sued the Metropolitan Life Insurance Company on a policy of life insurance of which she was the beneficiary. The policy was issued on January 1, 1931. Her husband, the insured, was accidentally drowned on October 25, 1931. The defense was that before the death of the insured the policy

had lapsed for non-payment of the premiums. The jury found for Mrs. Smith. The company's motion for a new trial was overruled, and it excepted.

According to the terms of the policy, the premiums were to be paid monthly, $2.42 each month. The basic rate was $1.99 per month, which was increased to $2.42 by a supplemental contract providing for disability benefits, and doubling the principal indemnity in the event of death as a result of "bodily injuries sustained through external, violent, and accidental means." Among the terms of the policy were these: "This policy is issued in consideration of . . the payment . . of one dollar and ninety-nine cents (which maintains this policy in force for a period of one month from its date of issue, as set forth below), and of the payment hereafter of a like monthly premium on each first day of every month (hereinafter called the due date)." The additional payments for the further benefits were to be made simultaneously with and under the same conditions as the regular premiums. "All premiums are payable on or before their due dates, at the home office of the company, or to an authorized agent of the company, but only in exchange for the company's official premium receipt signed by the president, vice-president, actuary, treasurer, or secretary of the company and countersigned by the agent or other authorized representative of the company receiving the premium. The payment of a premium shall not maintain this policy in force beyond the due date when the next premium is payable, except as hereinafter provided. A grace period of 31 days . ·. will be granted for the payment of every premium after the first, during which grace period the insurance shall continue in force. . . No agent is authorized to waive forfeitures, to alter or amend this policy, to accept premiums in arrears or to extend the due date of any premium." The policy carried on its face the receipt for the first monthly premium. It was issued in January, and the insured died on October 25. Allowing the 31 days grace in payment of premiums, as provided for in the policy, it is obvious that unless nine-months premiums were paid to the company, the policy had lapsed before October 25. It was necessary for the evidence to show payment of premiums for January, February, March, April, May, June, July, August, and September, before Mrs. Smith could recover.

The agent, Malcolm, testified that he himself advanced the money to pay the February, March, and April premiums. He did this in the nature of a loan to the insured. His evidence was not disputed. He explained that it was to his interest that the policy be kept in force. A page from the company's books was introduced, and it showed receipt by the company of the three premiums on the dates on which Malcolm said he had paid them. As it was not imperative that the premiums should be paid *by the insured* to keep the policy in force, payment by any one else for him to the company was sufficient. On May 1 the policy was in force, premiums for January, February, March, and April having been paid. The insured owed Malcolm $7.26 on account of his advances. The insured also owed the company $2.42 for the May 1st premium. On May 6 the insured gave Malcolm a check for $4.84, payable to the company. It was introduced in evidence, and showed an indorsement by the company. A large part of the controversy in the case centers on this check. In reference to the payment by this check Malcolm testified: "I told him about his insurance being past due, and that I had turned the premiums in for him; and he said, 'I appreciate it' and he wrote me a check for a two-months premium. . . I told [the insured] that I had been carrying his insurance in force, and that there was three months due on it. He says, 'Well, I will give you a check for two months now; and you come back before the month is out, and I will give you a check for two more months.' I took the check for $4.84 and turned it in to the Metropolitan, retaining, in cash money, sums that I had collected for $4.84 from other policyholders that day, and kept it for myself. I retained, out of the company's general fund, the amount of that check when I turned it in." This check does not appear on the books of the company as a credit to insured. There is nothing to show that the insured authorized Malcolm to handle it as he did handle it.

Counsel for Mrs. Smith lay stress on the fact that the check was payable to the company, and insist that if the insured's intention had been to reimburse Malcolm on account of money advanced, it would have been made payable to Malcolm. This contention seems to be sound. The date of the check is May 6. On May 1 another premium had matured and was unpaid. It is hardly possible that the insured intended this check to discharge both the May 1st and

June 1st premiums, for there was no necessity for him to pay the June premium at that time and before it was due. At the time the check was given the insured owed Malcolm personally $7.26 for money advanced, and owed the company $2.42 for the May premium. It may be that the insured intended that the check should discharge the May 1st premium and $2.42 due Malcolm for one of the premiums he had paid. Malcolm's statement as to what the insured said is in line with this. Counting the May premium, the insured was four months behind, one to the company and three to Malcolm: and when he said, "I will give you a check for two months now; and you come back before the month is out, and I will give you a check for two more months," he must at the time evidently have intended to square up the whole four months before June 1. This check being made payable to the company and cashed at the bank by the company, the company is bound by the situation that it was a payment to the company. The inference is at least not demanded, as a matter of law, that the check was given in payment of any debt due by the insured to Malcolm. Had the check been made payable to Malcolm, it would have been applicable to the two oldest claims Malcolm held against the insured; but as it was payable to the company, this rule does not apply. The check was payable to the company and was cashed; and therefore the company is bound, whether it made the proper entries on its books or not, and notwithstanding the provision in the policy that payment must be made only in exchange for the company's official receipt.

The next entry on the company's sheet is receipt, on June 23, of the May premium. As to this Malcolm testified, "That premium also was paid by me for the month of May." This payment by Malcolm left the insured's indebtedness on July 1 as follows: June and July premiums due the company, $4.84, and three payments (counting one as paid out of the check of May 6) due to Malcolm for money advanced, $7.26—two of the premiums which Malcolm had advanced for February, March, and April, and the one for May. On July 13 the insured gave to Malcolm another check for $4.84, payable to the company, which Malcolm handled as he had handled the other check, by turning it in to the cashier and taking out of other cash funds in his possession the $4.84. In other words, he applied the amount of the check to his personal debt

against the insured. But there is no evidence whatever that the insured authorized him to do this. The inference is authorized that this check, which was payable to the company, was intended to cover June and July premiums, and was not intended to be used by Malcolm and applied on his personal debt against the insured. As to this check Malcolm stated: "That was my money. It went to the Metropolitan Life Insurance Company in the form of $4.84, not listed, and not specified as representing money for any particular policy." But undoubtedly the company cashed the check, and undoubtedly the money received on it was the insured's money. If Malcolm mishandled the transaction, that was a matter between Malcolm and the company, with which the insured had nothing to do. The fact of it is that when the insured drew this check payable to the company for $4.84, he owed that amount to the company.

In connection with the July payment a receipt was introduced in evidence, reading, apparently, "6-13-31. Recd. of Carlton Smith $2.42 for June, 1931. C. A. Malcolm." An expert witness gave his opinion that this writing had been altered. Malcolm testified that it had been written on July 13, for $4.84, and referred to the July 13, check for $4.84. There is nothing else in the record to indicate that any payment was in fact made by the insured on June 13, 1931. An inspection of the photostat copy of this receipt which appears in the record indicates that the receipt was tampered with in at least one place. It is immaterial whether this receipt shows another payment of either one or two premiums. Without this receipt the evidence is sufficient to authorize the inference that sufficient premiums were paid to prevent the lapsing of the policy before the death of the insured October 25, 1931. This will be seen later. On August 1 the situation was this: the insured owed the company $2.42 for the August premium, and owed Malcolm the $7.26 for money advanced. In August a payment was made in cash by the insured to Malcolm, the amount being $4.84. Malcolm testified that the insured gave him a five-dollar bill, and that he gave the insured 16 cents in change. As to the circumstances of this payment the evidence is in conflict. A witness, Hallman, testified that he saw the insured give the $5 to Malcolm, that this was "about the 27th," but he does not say what month; that it was "just before he was going away on his vacation at the time he was

drowned;" that the insured explained fully that he "expected to be away and that he wanted to keep up this insurance;" that Mr. Smith, the insured, "told Mr. Malcolm that he was going to be gone for two or three weeks and he did not want the policy to lapse while he was gone, and he gave him this $5 bill. All of it was to go on the policy." The $4.84 appears on the company's books as having been credited to the insured's account on August 13. Mrs. Smith testified that she and her husband left on their vacation about October 23. Malcolm contradicted Hallman and said that no one else was present when the insured gave him the five-dollar bill, and that the money was paid at Smith's home. He stated: "I also wanted to get him to sign a statement as to the condition of his health, inasmuch as the premium had run past the grace period; so I went by there the next morning, and there was no one at home. . . I was told . . that they went on their vacation the night before."

It is clear that Malcolm received this August payment of $4.84 in cash "for two-months premium," and turned the money in to the company, and that the company entered it on its books as coming from the insured. The entry is dated August 13; and as the insured then owed the company only $2.42 for the month of August, the retention of the whole $4.84 must be applied to cover the premium which was to become due on September 1. It can not be said, under all the circumstances as to this payment and the conflict in the evidence, that the jury was not authorized to find that this $4.84 was a payment of the premiums for August and September. See *Metropolitan Life Insurance Co.* v. *Vickery,* 49 *Ga. App.* 727 (176 S. E. 815). The evidence authorized the inference that all the premiums had been paid to October 1. As there was a grace period of thirty-one days for the payment of the premium due October 1, the policy had not lapsed on October 25, the date of the insured's death.

The plaintiff in error complains of the admission in evidence of the testimony of Hallman as to a payment by the insured to the agent Malcolm, on the ground that the payment did not show a payment of the premium to the company, because no official receipt was given, that there was no evidence to show that the payment was actually turned over by the agent to the company, and that the agent denied receiving the payment at the time and place

identified by Hallman. There were conflicting statements of Hallman and Malcolm about this payment, but it all was matter for the jury. There can be no doubt that the two items which appear on the company's books as being credited to this policy on August 13, were made from this payment. Whether the payment was made at the place and at the time stated by Hallman or at the place and at the time stated by Malcolm is immaterial. The admission of this evidence was not error.

It appears that after several hours deliberation the foreman reported that the jury was deadlocked, and asked if it would be in order for the stenographer to read to the jury certain evidence of the witness Malcolm. The court sent the jury out, and discussed the item with counsel. Counsel agreed that the testimony of Mrs. Smith, Hallman, and Malcolm be read to the jury. Although advised of the agreement, the court did not recall the jury and did not have read to them the evidence referred to. About three hours later the jury returned a verdict for Mrs. Smith. The plaintiff in error alleges error because the court should have had the evidence read to the jury or should have declared a mistrial. No motion for mistrial was made. The matter of causing the testimony to be read to the jury was within the discretion of the trial judge.

It is undisputed that all payments made by the insured were made to Malcolm and were made in payment of premiums on the policy, either in reimbursement of Malcolm for premiums advanced or directly to him in payment of premiums due on the policy. The insured at no time owed the company anything except premiums due on this particular policy. Therefore when any payment by the insured reached the company it was necessarily a payment on the premiums due to the company on this policy, if any such premium at the time was due. The inference is conclusive, as a matter of law, that if the proceeds of any payments made by the insured were received by the company when a premium was due, the payment was in payment of such premium. Therefore a charge by the court to the jury, that if the monthly premiums were paid by the insured to the agent Malcolm, and the company received the proceeds of the payments during a month "when the monthly payments were currently due, the presumption would be that such payments were intended to be applied in payment of the current monthly premiums, and not in reimbursement to the agent as per-

sonal transactions," was not error on the ground that there was an issue of fact whether such "presumption" arose, or on any other ground. The court in the charge fairly and correctly submitted to the jury the contentions of the defendant, and gave in charge the correct principles of law applicable to the issues made by the evidence.

The plaintiff having written off from the verdict as returned an amount representing damages for delay, and attorney's fees, the grounds of the motion for a new trial which relate only to those items will of course not be considered. The verdict for the plaintiff, in a sum exclusive of the amount found as damages and attorney's fees which were written off, was authorized; and no error appears. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Jenkins, P. J., and Sutton, J., concur.*